Janet CHEEK, Plaintiff–Appellant,

v.

**PEABODY COAL COMPANY,**
Defendant–Appellee.

No. 95–3261.

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1996.

Decided Oct. 2, 1996.

**202**

Patricia L. Hayes (argued), Hayes Law Office, Springfield, IL, for Janet Cheek.

William S. Hanley, Thomas H. Wilson, Sorling, Northrup, Hanna, Cullen & Cochran, Springfield, IL, John Gianoulakis (argued), Susan E. Bindler, Robert F. Murray, John W. Lemkemeier, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, MO, for Peabody Coal Co.

Before CUMMINGS, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Janet Cheek was employed by the Peabody Coal Company between January 31, 1977 and July 22, 1994. She held a variety of positions during that time, and her employment was continuous, with one exception. In November 1990, Cheek was suspended without pay for six months due to excessive absenteeism. In response to the suspension, Cheek filed complaints with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission on March 22, 1991, alleging that Peabody had discriminated against her on the basis of sex. Cheek claimed that she had been treated differently than male employees who were absent as often as she had been, and that male workers more readily received sickness and accident benefits, which she did not receive. The IDHR dismissed Cheek's complaint for lack of substantial evidence, and the EEOC issued a notice of her right to sue. Cheek subsequently filed this suit in the Central District of Illinois on November 30, 1993.

Cheek's three-count complaint expanded significantly on her EEOC allegations. It claimed that men received better job assignments and more training opportunities than women, and that men in need of medical leave were treated more favorably than women with similar needs. Cheek alleged that these practices violated Title VII. The district court granted Peabody's motion for summary judgment, and Cheek appeals. We affirm.[1]

I. Sexual Harassment

Although Cheek's complaint did not refer, either directly or indirectly, to sexual harassment, she asserted both in response to Peabody's motion for summary judgment and on appeal that her claim was based not only on a theory of disparate treatment but on one of hostile environment sexual harassment as well. That theory, however, was waived because of its omission from Cheek's complaint. In addition, as the district court found, the theory was also absent from Cheek's EEOC complaint. A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint. *Harper v. Godfrey Co.*, 45 F.3d 143, 147–48 (7th Cir.1995). In determining whether the current allegations fall within the scope of the earlier charges, the court looks at whether they are "like or reasonably related to" those contained in the EEOC complaint. 45 F.3d at 148. If they are, the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it. *Id.*

We agree with the district court that those conditions have not been met in this instance. The allegations in Cheek's EEOC complaint, which asserted only disparate treatment and did not in any way advert to sexual harassment, are completely unrelated to those that underlie her harassment charges. As the district court noted, the charges implicate different individuals and stem from different

---

1. Cheek's complaint also alleged intentional infliction of emotional distress in violation of state law, but Cheek has not appealed as to that claim.

conduct. Not having raised the claim or even its seeds before the EEOC, Cheek was not entitled to bring it in her Title VII action. *See Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir.) ("Filing an EEOC charge, of course, is a prerequisite to suit under Title VII, in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken."), *cert. denied,* —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994).

## II. Disparate Treatment

■ The allegations of disparate treatment in Cheek's complaint were much more extensive than those she asserted before the EEOC. Whereas her EEOC complaint referred only to disparities in the company's response to absenteeism and its provision of sickness and accident benefits, the district court complaint asserted that the company discriminated in terms of training, job placement, and, as a result, compensation. But the new charges are in no way "like or reasonably related" to those raised in the EEOC complaint. As with the harassment charges, they implicate entirely different circumstances and participants. Indeed, the only connection between the two charges is that they both allege a violation of Title VII. That similarity is not enough. Not having raised the charges before the EEOC, Cheek was not entitled to raise them for the first time in her federal court complaint.

■ The only aspect of Cheek's complaint that is properly before us, then, is the allegation that men with medical needs received better treatment than women,[2] as that issue was the sole focus of her EEOC charges. A plaintiff has two routes available in attempting to establish intentional discrimination in violation of Title VII. She may rely on direct evidence, or, in its absence, she may rely on the indirect method of proof set out

in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665, 667 (7th Cir.1995).

■ Cheek's direct evidence of discriminatory intent included two statements by supervisory personnel in the mine. First, she pointed to a statement by mine superintendent Taglioni in 1977 that "We don't like women, but we have to accept them." Second, she quotes another male supervisor as stating in 1979 that "There is no woman worth top pay." We agree with the district court that although these statements bear on the issue of intent, they do not suffice to establish intentional discrimination. In order to constitute direct evidence of discrimination, a statement must relate to the motivation of the decisionmaker responsible for the contested decision. *See, e.g., Hill,* 67 F.3d at 667. These remarks were uttered nearly fifteen years prior to the employment actions about which Cheek now complains.[3] In addition, Cheek has produced no evidence whatsoever that suggests a nexus between the remarks and the contested employment actions. The remarks do not, therefore, suffice as direct evidence of discrimination to support Cheek's Title VII claim. *See e.g., Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1266 (7th Cir.1993) ("We have held that such remarks, when unrelated to the decisional process are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994).[4]

■ Having failed to proffer direct evidence, Cheek may succeed by way of the burden-shifting approach set out in *McDonnell Douglas.* Under that analysis, Cheek

---

**2.** Cheek asserted that her absenteeism was caused by health problems, and that unlike women, men with similar problems received medical leaves of absence.

**3.** The district court considered these statements, even though they fell outside of the 300 day period established by 42 U.S.C. § 2000e–5(e)(1), to allow for the possibility that Cheek could establish a continuing course of conduct. *See*

*Saxton v. American Tel. and Tel. Co.,* 10 F.3d 526, 532 n. 11 (7th Cir.1993).

**4.** As discussed below, the statements also do not support Cheek's contention that men with medical needs received better treatment than women, so they do not save her claim from dismissal under the burden-shifting approach of *McDonnell Douglas* either.

bears the initial burden of establishing a prima facie case of sex discrimination. To do so, she must show that (1) she was a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated males more favorably. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994).

 Cheek has failed to make out a prima facie case of discrimination because, even making all inferences in her favor, she has proffered no evidence to support the fourth prong, that she was treated less favorably than similarly situated males. Cheek's allegation that men with medical needs like her own were treated more favorably than women is unsupported by any evidence. Cheek did not request a medical leave of absence, and she identified no men who received one without requesting it. Nor has she proffered any evidence of male miners with similar numbers of absences who were not disciplined.[5] As for sickness and accident benefits, Cheek has also proffered no evidence of differential treatment of male and female workers. Supported by no evidence of dissimilar treatment, Cheek's claim was properly rejected.

### III. Conclusion

In her EEOC complaint, Cheek did not raise her hostile environment claim or her allegations that women were discriminated against in job assignments and training opportunities. She was therefore precluded from pursuing those allegations in federal court. As for the charges that properly were before the court, Cheek failed to meet her burden in establishing a prima facie case of disparate treatment. The judgment of the district court is

AFFIRMED.

---

5. Although we have found that Cheek's other allegations of disparate treatment were waived because she did not raise them before the EEOC, we note that they would also have failed on the merits, as Cheek also offered no evidence to support her charges regarding job assignments

and training. Indeed, the evidence showed that she received every position she bid for, including one that was at the highest grade of 5. She never sought to participate in the training that she claims was unfairly reserved for men.