Ella FRANCISCO, Plaintiff–Appellant,

v.

Anthony J. PRINCIPI, Defendant–
Appellee.

No. 01–2576.

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 2002.

Decided March 12, 2002.

142

Before POSNER, EVANS, and WILLIAMS, Circuit Judges.

**ORDER**

Ella Francisco sued the Secretary of the United States Department of Veterans Affairs ("VA") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, claiming that her former supervisor sexually harassed her, and that the VA breached a settlement agreement and retaliated against her by reassigning her to a different position at a lower grade level in connection with a reduction in force ("RIF"). The district court granted summary judgement to the VA, and Francisco appeals. We affirm.

## I.

Francisco is an employee of the VA. In 1995 Francisco–then a contract specialist in Acquisition and Material Management Service ("AMM") at the Chicago Westside Veterans Administration Hospital–filed a complaint with the VA's Equal Employment Opportunity ("EEO") Director, alleging that her supervisor had sexually harassed her.

Francisco settled with the VA before receiving a final determination of her EEO complaint. In exchange for Francisco's agreement to withdraw her EEO complaint, the VA agreed, among other things, to "permanently reassign complainant ... to a position outside of Acquisition & Materiel [sic] Management Service at the same grade and pay that the complainant is currently receiving [GS–9]." The agreement also provided that "[t]his agreement constitutes the entire agreement and there are no other terms to this agreement except those specified herein."

Pursuant to this settlement, VA reassigned Francisco in September 1995 to work as a contract specialist, GS–9, in Recreation Therapy Service at the same hospital. Francisco never again worked in AMM or for her alleged harasser after she settled with the VA.

In 1997 the VA implemented a RIF that resulted in Francisco being displaced from her GS–9 contract specialist position to a position at a lower grade level, but with the same pay (it is undisputed that the RIF never affected Francisco's salary). The VA sent Francisco a RIF letter informing her that, pursuant to the federal regulations that govern RIFs, Francisco was being displaced by an employee with greater "retention standing" (*i.e.,* status and tenure). The RIF letter also offered to reassign Francisco the position of claims clerk, GS–5, in Medical Administration Service. Francisco accepted.

Later, additional positions became available that the VA could offer to employees affected by the RIF. In May 1997 the VA offered one such position to Francisco–that of secretary, GS–6, in Audiology and Speech Pathology Service. Francisco accepted. In July 1997 the VA offered Francisco another position–that of supply technician, GS–7–but that offer was contingent on her return to AMM (where she worked prior to settling with the VA). Francisco maintains that the VA was trying to force her to return to work in AMM for her alleged harasser, but the VA disputes this. Francisco asserted in briefing summary judgment that employees of the VA's personnel department told her that she had to accept the position in AMM or she would have no job. But Francisco also admitted in an affidavit that "[l]ater I was advised by the director's office that a mistake had been made and that I did not have to go to Acquisition and Material Management." In fact, the VA's written offer stated that because of the settlement agreement Francisco could choose between the supply technician position in AMM or the secretary position in Audiology and Speech Pathology. Francisco rejected the supply technician position and reaffirmed her acceptance of the secretary position.

## II.

In August 1997 Francisco filed an administrative complaint, claiming that the VA had breached the settlement agreement by reassigning her to work at AMM for her former supervisor. After the VA determined that no breach had occurred, Francisco appealed to the Equal Employment Opportunity Commission ("EEOC").

In May 1998, after waiting approximately a year and a half without receiving a final decision from the EEOC, Francisco filed this lawsuit. Francisco claimed that

the VA breached the settlement agreement, discriminated against her based on sex, and retaliated against her for her 1995 EEO complaint when it reassigned her to a position at a lower grade level.

Both parties moved for summary judgment. In addition to the claims Francisco asserted in the complaint, Francisco expanded her discrimination claim to include a claim that her former supervisor once again had sexually harassed her. This claim was based on Francisco's allegation that approximately 18 months after filing this lawsuit she drove into a gas station and saw her former supervisor, who grinned and waved at her.

In July 2000 the court granted partial summary judgment to the VA on the retaliation and sexual harassment claims. As to retaliation, the court concluded that Francisco failed to create a triable issue because no evidence existed of a nexus between Francisco's 1995 EEO complaint and her 1997 reassignment to a position at a lower grade level. The court emphasized that the lengthy period of time between the two events discounted any causal link. As to Francisco's harassment claim, the court concluded that the VA's "acts were not sufficiently severe or pervasive to interfere with a reasonable person's work performance or one's well being."

In March 2001 after determining that the court had jurisdiction to enforce the parties' settlement agreement, the court granted summary judgment to the VA on the remaining breach of agreement claim. The court concluded that no breach had occurred because Francisco never worked in AMM after she settled with the VA, and that the settlement agreement did not insulate Francisco from the RIF.

### III.

In our de novo review, we must evaluate the evidence in the light most favorable to Francisco, drawing all reasonable inferences in her favor. *See Jordan v. Summers*, 205 F.3d 337, 341 (7th Cir.2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A. Breach of Settlement Agreement

At the outset, the district court correctly determined that it had jurisdiction to enforce the parties' settlement agreement. *See Ruedlinger v. Jarrett*, 106 F.3d 212, 215 (7th Cir.1997) (holding that private plaintiffs may bring an action under Title VII to enforce a pre-determination settlement agreement).

■ On the merits, Francisco challenges the district court's conclusion that the VA did not breach its agreement to "permanently reassign" her outside of AMM at the same grade level. She maintains that the VA did breach the agreement because the VA (1) reassigned her back to AMM when the personnel department purportedly told her that she had to accept the supply technician position in AMM, and (2) displaced her from her GS–9 position and then offered her other positions at lower grade levels.

Francisco's arguments lack merit. The record evidence overwhelmingly establishes that the VA never reassigned her to AMM. It is undisputed that Francisco never worked there after entering into the settlement agreement. By her own admission, after the personnel department purportedly told her she had to accept the supply technician position in AMM or she would lose her job, the director of personnel told her that a "mistake had been

made" and that she did not have to return to AMM. Indeed, the offer letter expressly stated that "under your own volition, [you may] choose to decline that offer [of Supply Technician] and accept the lower graded position of Secretary [in Audiology and Speech Pathology]." In her brief and at oral argument, Francisco also asserted that the fact that she was listed on AMM's payroll for an unspecified period of time after the settlement agreement demonstrates that the VA failed to permanently reassign her out of AMM. It does not. The settlement agreement does not provide that the VA will remove Francisco from AMM's payroll.

■■■ Neither did the VA breach the agreement when it offered Francisco positions at lower grade levels. Francisco argues that the VA's agreement to "permanently reassign" her to a position at the same grade level outside of AMM means that the VA could not later reassign her to a position at a lower grade level in a RIF; she says that the agreement does not contain an "exception" for RIFs. Because the settlement agreement is a government contract, federal common law governs its interpretation. *Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000). Under federal common law, we must interpret the settlement agreement "in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* (citations omitted). But the ordinary meaning of the phrase "permanently reassign" does not mean that the VA can never under any circumstances reassign Francisco to a position at a lower grade level. "Permanent" is defined as "lasting or intended to last *indefinitely* without change." WEBSTER'S NEW WORLD DICTIONARY 1006 (1988) (emphasis added). Francisco's interpretation–that the agreement immunized her from employment actions like the RIF–would transform the

settlement agreement into an ·absolute guarantee of lifetime employment. Nothing in the agreement suggests that it was intended as such a guarantee. *Cf. Fittshur v. Vill. of Menomonee Falls*, 31 F.3d 1401, 1408 (7th Cir.1994) (a promise of "lifetime employment" must be "clear and unequivocal"); *Wright v. Assoc. Ins. Cos. Inc.*, 29 · F.3d 1244, 1250 (1994) (distinguishing "lifetime employment" from "permanent employment"). Thus, the ordinary meaning of the settlement agreement does not preclude the VA from reassigning Francisco to a position at a lower grade level in a RIF.

Moreover, as the district court observed, the foregoing conclusion is bolstered by the settlement agreement's merger clause, which provides that the agreement "constitutes the entire agreement and there are no other terms to this agreement except those specified herein." Because the agreement is silent regarding RIFs, it cannot be interpreted to insulate Francisco from them. *See Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 707 (7th Cir.2001) (holding that the presumption that a written contract is complete in and of itself is even stronger when the contract contains a merger clause). The district court correctly granted summary judgment to the VA.

### B. Retaliation

■■■ Francisco next challenges the district court's conclusion that she failed to establish a causal link between her 1995 EEO complaint and her 1997 reassignment to a position at a lower grade level. To establish a retaliation claim, a plaintiff must show that she engaged in statutorily protected expression by complaining about discrimination covered by Title VII, that she suffered an adverse action by her employer, and that there is a causal link between the protected expression and the

adverse job action. *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir.2000).

Francisco asserts that she established a causal link by virtue of "the short time period" between her 1995 EEO complaint and her 1997 reassignment to a lower grade level. But, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close'," and two years is too long. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (concluding that twenty months was insufficient and citing cases holding that three and four months were insufficient); *cf. McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir.1997) (holding that 2–3 day period was sufficient). The district court properly granted summary judgment to the VA.

### C. Sexual Harassment

■ Francisco argues that the district court erred in not granting summary judgment to her on her sexual harassment claim because the VA failed to "prevent future contact" with her former supervisor (the grinning and waving incident at the gas station). To establish a prima facie case of hostile environment sexual harassment, a plaintiff must show that (1) she was subjected to unwelcome harassment in the form of sexual advances, requests for sexual favors or other conduct of a sexual nature; (2) the harassment was based on her sex; (3) the harassment created an intimidating, hostile or offensive working environment that unreasonably interfered with the plaintiff's work performance, and (4) there is a basis for employer liability. *Hall v. Bodine Elec. Co.*, 276 F.3d 345,

354–355 (7th Cir.2002) (internal quotation and citation omitted).

Francisco's argument is frivolous. It is unclear why she believes that her supervisor's grinning and waving is sexual harassment–it occurred only once at a gas station and not in the workplace, and Francisco does not claim that the VA ever knew about the incident. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir. 2001) ("simple teasing, offhand comments, and isolated incidents" are not sufficiently severe or pervasive to constitute harassment).

AFFIRMED.